IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


KENNETH J. GOOD,                    )
                                    )
                    Plaintiff,      )
                                    )
        v.                          )        Civil Action No. 05-383
                                    )        Judge Nora Barry Fischer
FEDERAL RESERVE BANK                )
OF CLEVELAND,                       )
                                    )
                    Defendant.      )


<u>**MEMORANDUM OPINION**</u>

## I.    INTRODUCTION

Plaintiff Kenneth J. Good ("Plaintiff") filed this civil action against Defendant Federal Reserve Bank of Cleveland ("Defendant"), alleging age discrimination by his employer in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") and sex discrimination in violation of Title VII of the Civil Rights Act of 1963 ("Title VII').[1]  Presently before the Court is Defendant's Motion for Summary Judgment ("Defendant's Motion") [DE 42].

## II.    FACTS

Defendant is one of twelve (12) Reserve Banks in the Federal Reserve System. (Docket No. 43, Statement of Undisputed Material Facts, ("SOF") at 1).[2]  Defendant is headquartered in Cleveland, Ohio, and currently operates branch offices in Cincinnati, Ohio and Pittsburgh,

---

[1]In his initial complaint, Plaintiff alleged a claim in violation of the Pennsylvania Human Relations Act ("PHRA"), but no such claim is alleged in the Second Amended Complaint in this action.

[2]Except as otherwise noted, the facts cited in this section are admitted by Plaintiff.

1

Pennsylvania.  SOF at ¶ 3.  Plaintiff is currently a 55 year old man employed by Defendant as an Assistant Vice President ("AVP") in Defendant's Cleveland check processing function ("Check"). SOF at ¶5.  Plaintiff began his employment with Defendant in May 1986 as a Procedures Analyst in Defendant's Pittsburgh branch and, between 1986 and 2000, was promoted to other positions within the Pittsburgh branch.  SOF at ¶¶ 6-13.  On June 16, 2000, Plaintiff was promoted to AVP Check in Pittsburgh.  SOF at ¶ 13.  In February of 2003, as the result of declining check volume, Defendant announced that its Pittsburgh check operations would be consolidated into the Cleveland check operations, effective November 2003.  SOF at ¶¶ 15, 16.  Plaintiff applied for a Vice President ("VP") position in the Cincinnati branch, but was not selected for that position.  SOF at ¶ 20.  In May of 2003, Defendant offered to Plaintiff, and Plaintiff accepted, an AVP position within Cleveland Check effective upon consolidation of the Pittsburgh and Cleveland check operations. SOF at ¶¶ 21, 22.  Defendant never promised Plaintiff a transfer back to the Pittsburgh branch at a later date, although Plaintiff believes that he was reasonably led to believe that potential for this transfer existed.  SOF at ¶ 23; (Docket No. 65, Plaintiff's Response to Defendant's Statement of Undisputed Facts ("Plaintiff's Facts") at ¶ 23).  Plaintiff remained employed as AVP in the Pittsburgh check operations until its consolidation with the Cleveland check operations on October 31, 2003.  SOF at ¶ 25.

In December of 2003, shortly after Plaintiff was transferred to Cleveland, the United States Treasury, Bureau of Public Debt, announced that it would consolidate certain fiscal agency-related activities, which resulted in the expansion of certain existing functions and the addition of several new functions within the Treasury Retail Securities ("TRS") department within the Pittsburgh branch. SOF at ¶ 31.  On February 27, 2004, Raymond Brinkman, VP TRS in the Pittsburgh Branch,

met with Plaintiff in Cleveland and informed him that he would not be part of Mr. Brinkman's TRS

team in Pittsburgh.  SOF at ¶ 32.  In April of 2004, Plaintiff advised Peggy Velimesis, Senior Vice

President, Human Resources Department, that Mr. Brinkman's hiring practices were unlawful and

failed to comply with Defendant's policy.  SOF at ¶ 33.  In addition, Plaintiff testified that he felt he

was being discriminated against as of April of 2004.  SOF at ¶ 34.

On June 11, 2004, Defendant announced that Amy Heinl, a younger female, had been

promoted from manager to AVP of TRS in Defendant's Pittsburgh branch.  SOF at ¶¶ 12, 35.  On

September 2, 2004, Plaintiff lodged an internal charge of discrimination by sending an email to Ms.

Velimesis alleging that Mr. Brinkman had discriminated against Plaintiff on the basis of age and

gender by promoting Ms. Heinl to AVP of TRS in Pittsburgh.  SOF at ¶ 36.  In the September 2,

2004 email to Ms. Velimesis, Plaintiff stated that

> I expressed some very specific concerns to you when we met in your
> office during the last week of this past April, at which time it seemed
> to me that Mr. Brinkman was not adhering to Bank-approved and
> legal hiring practices.  Specifically, I felt that he was following
> discriminatory practices with respect to age, and possibly gender,
> based upon recruitment that had taken place. . ., and appointments
> which looked like they may be in the planning stage (and which
> would ultimately take place).
>
> *    *    *    *
>
> I can only conclude that not only my non-selection, but total lack of
> consideration for this position, on the part of Ray Brinkman is due to
> his pattern of hiring discrimination which I have expressed to you as
> early as last April.

SOF at ¶ 37; Exhibit C to Defendant's Motion for Summary Judgment.

The Check department and TRS are separate organizational units within the Federal Reserve

Bank.  SOF at ¶ 39.  Plaintiff's current position, AVP Check in the Cleveland branch, and the position he desired, AVP TRS in the Pittsburgh Branch, carry the same title, although Plaintiff disputes that the two positions are "on the same level" within Defendant's hierarchy.  Plaintiff's Facts at ¶ 40.  Plaintiff also disputes that those who hold the positions of AVP Check in Cleveland and AVP TRS in Pittsburgh receive the same salary structure and benefits.  Plaintiff's Facts at ¶ 42.  Plaintiff denies that, had he been transferred to AVP TRS in Pittsburgh, the transfer would not have resulted in an increase in salary or benefits.  Plaintiff's Facts at ¶ 43.  Further, Plaintiff contends that the Check unit is a "dying" unit which will eventually become obsolete because of electronic banking and has fewer long term opportunities compared to TRS, which has been earmarked as a permanent function.  Plaintiff's Facts at ¶ 44; (Docket No. 58, Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Response") at p. 3).  Accordingly, Plaintiff disputes Defendant's argument that a transfer from AVP Check in Cleveland to AVP TRS in Pittsburgh is a "lateral" move.  Plaintiff's Response at pp. 3-4.

Plaintiff filed a claim with the Equal Employment Opportunity Commission ("EEOC") on December 4, 2003. (Docket No. 12, Second Amended Complaint at ¶4).  Subsequently, on March 21, 2005, Plaintiff filed his initial complaint with this Court.  (Docket No. 1).  On April 29, 2005, Plaintiff filed an Amended Complaint with this Court (Docket No. 9) and on June 24, 2005, Plaintiff filed a Second Amended Complaint in this action (Docket No. 12).   The Second Amended Complaint is the active complaint in this action.  Defendant filed its Motion for Summary Judgment on October 5, 2006.  Although such motion was fully briefed as of November 28, 2006, disposition of Defendant's Motion was delayed because Defendant filed a Motion to Strike Affidavit of Kenneth J. Good, also on November 28, 2006 (Docket No. 60).  As this affidavit was attached as an exhibit

4

to Plaintiff's Response, it's resolution necessarily preceded disposition of the present motion.  The

Court denied Defendant's Motion to Strike on March 16, 2007, following a hearing. (Docket No.

67).  Less than a month later, on April 6, 2007, this case was transferred from Judge Thomas M.

Hardiman to Judge Nora Barry Fischer.  The Court then scheduled a status conference with the

parties for April 25, 2007, to discuss the possibility of settlement and/or alternative dispute

resolution.  Upon joint motion by the parties, the status conference was postponed until May 11,

2007.  At the time of the status conference, the parties indicated that they would discuss settlement

and were ordered to report back to the Court on or before June 20, 2007 as to whether settlement was

reached.  The Court, having been advised that the parties are unable to reach settlement, now

considers Defendant's Motion.

## III.    STANDARD OF REVIEW

Summary judgment may only be granted "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

of law." Fed. R. Civ. P. 56(c).  Pursuant to Rule 56, the Court must enter summary judgment against

the party "who fails to make a showing sufficient to establish the existence of an element essential

to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986).

In evaluating the evidence, the court must interpret facts in the light most favorable to the

non-moving party, and draw all reasonable inferences in his favor.  *Watson v. Abington Twp.*, 478

F.3d 144, 147 (3d Cir. 2007).  Initially, the burden is on the moving party to demonstrate that the

evidence in the record creates no genuine issue of material fact. *Conoshenti v. Public Serv. Elec. &*

5

*Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004).  The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005).  While the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the admissible evidence in the record would be insufficient to carry the nonmovant's burden of proof at trial.  *Celotex*, 477 U.S. at 322-323.  Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. *Id.* at 324. The nonmoving party "cannot simply reassert factually unsupported allegations contained in its pleadings."  *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

Upon reviewing Defendant's Motion for Summary Judgment and brief in support thereof [DE 42, 46], Plaintiff's brief in opposition [DE 58], and Defendant's Reply [DE 62], it is clear that no genuine issue of material fact remains in dispute and summary judgment is appropriate at this time. Accordingly, as set forth below, Defendant's Motion for Summary Judgment is GRANTED.

## IV.    ANALYSIS OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant's Motion sets forth two basis upon which Defendant alleges it is entitled to judgment as a matter of law in this case.  First, Defendant argues that Plaintiff's claims are time barred because Plaintiff's December 3, 2003 EEOC filing was outside of the 180 day filing period. Next, Defendant argues that Plaintiff has not shown that he has suffered an actionable adverse employment action and therefore, has failed to establish a *prima facie* case under Title VII and the

ADEA.  The Court will first consider Defendant's argument that Plaintiff's claims are time barred.[3]

A.    **The Parties Agree That the Statute of Limitations for Plaintiff's Claims is 180 Days.**

At the outset, Defendant argues that the time period during which Plaintiff must have filed his claim in this case in order for it to have been timely is 180 days, as prescribed by Title VII and the ADEA, not 300 days, as prescribed by the PHRA.  (Docket 46, Memorandum of Law in Support of Defendant Federal Reserve Bank of Cleveland's Motion for Summary Judgment ("Defendant's Brief") at p. 13).  Plaintiff concedes this argument.  Plaintiff's Response at p. 5.  Accordingly, in determining whether Plaintiff's claim was timely filed, the Court will apply the 180 day limitations period.

B.    **The Statute of Limitations Began to Run When Plaintiff Was Told That He Would Not Be Considered for the AVP TRS Position.**

.

While the parties do not dispute that the statute of limitations for Plaintiff's claim is 180 days, the parties do dispute when that statute of limitations began to run.  Defendant argues that the 180 day statute of limitations began to run as of the date that Plaintiff was told that he would not be part of the TRS team in Pittsburgh (February 27, 2004), or at the latest, April 30, 2004, when he concluded that Defendant had discriminated against him.[4]  Plaintiff, however, contends that "confirmation" of his concern that he had been the victim of discrimination did not occur until June

---

[3]For the purpose of analyzing whether Plaintiff's claim was timely only, the Court will assume that the action of which Plaintiff complains constitutes an actionable adverse employment action.

[4]Plaintiff admitted in his deposition testimony that in April of 2004, Plaintiff complained to Ms. Velimesis that he had been discriminated against when Mr. Brinkman notified him that he would be excluded from the TRS team in Pittsburgh.  (Docket 45-2 at pp. 256-257).

of 2004, when Amy Heinl, a younger female, was appointed to the position of AVP of TRS in Pittsburgh.  (Docket No. 58 at pp. 5-6).  Accordingly, Plaintiff argues, the statute of limitations did not begin to run until that time.

At first blush, Plaintiff's argument that the statute of limitations does not begin to run until he learned that a younger woman was appointed to the position he desired seems logical.  After all, as of February 27, 2004, Plaintiff knew that he would not be given the position of AVP TRS in Pittsburgh, but it was not until he learned who was hired that he felt he could make a *prima facie* case against Defendant, or, as Plaintiff states, his concern that he was the victim of discrimination was "confirmed."  Although not explicitly argued, Plaintiff, in effect, attempts to employ the discovery rule to toll the statute of limitations for his claim until the time when he "discovered" that a younger female was selected for the position of AVP TRS in Pittsburgh.[5]  This theory, however, fails for the reasons set forth below.

### 1.    Application of the Federal Discovery Rule.

The courts of the Third Circuit "employ the federal 'discovery rule' to determine when the federal claim accrues for limitations purposes."  *Romero v. Allstate Corp.,* 404 F.3d 212, 222 (3d Cir. 2005) (citations omitted).  Under this rule, a claim will accrue when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim.  *Id.; see also Podobnik v. U.S. Postal,* 409 F.3d 584, 590 (3d Cir. 2005) ("the discovery rule delays the initial running of the statute of limitations, but only until the plaintiff has discovered: (1) that he or she has

---

[5]In addition, Plaintiff does not argue that the principle of equitable tolling applies in this case.  Further, the Court will not *sua sponte* discuss the same because no evidence of record exists to indicate that equitable tolling applies here.

been injured, and (2) that this injury has been caused by another party's conduct") (citations omitted). The discovery rule, although often applied to situations involving bodily injury, may also apply in cases involving alleged employment discrimination. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1386 n.5 (3d Cir. 1994) (*citing Delaware State College v. Ricks,* 449 U.S. 250, 258 (1980) (holding that the statute of limitations began to run "at the time the [alleged discriminatory] tenure decision was made *and communicated* to Ricks")(emphasis added)).[6]   In the context of employment cases, the law of the Third Circuit provides that "a claim accrues in a federal cause of action upon awareness of actual injury, not upon awareness that this injury constitutes a legal wrong." *Oshiver,* 38 F.3d at 1386.

### 2.    A Plaintiff "Discovers" Discrimination at the Time the Challenged Employment Act Occurs.

It is well settled that in employment cases, the date of the discriminatory act, or the challenged employment practice, is the date of the injury for purposes of determining the time period for the application of the statute of limitations. *Delaware State College v. Ricks*, 449 U.S. at 258*; Wastak v. Lehigh Valley Health Network*, 342 F.3d 281, 287 (3d Cir. 2003)*; accord Amini v. Oberlin College*, 259 F.3d 493, 498-500 (6th Cir. 2001) (statute of limitations began to run when the plaintiff was notified that he had not been selected for the position for which he applied); *Bennett v. Coors Brewing Co.*, 189 F.3d 1221, 1235 (10th Cir. 1999) ("While the hiring of new, younger employees might be evidence of Coors' alleged discriminatory intent at the time appellants left Coors, it is the

---

[6]The Third Circuit's adoption of the discovery rule has not been affected by *Ledbetter v. Goodyear Tire & Rubber Co. Inc.*, 127 S.Ct. 2162, 2007 WL 1528298 (May 29, 2007), to date. The Supreme Court did not address the applicability of the federal discovery rule because it was not argued by the plaintiff that such a rule would change the outcome of the case. *Ledbetter*, 127 S.Ct. at 2177 n.10.

alleged discriminatory 'discharge' that appellants seek to redress."); *Dring v. McDonnell Douglas Corp.*, 58 F.3d 1323, 1328 (8th Cir. 1995) (In the context of an ADEA action, the statute of limitations begins to run when the plaintiff receives notice of a termination decision). This principle is applied even in cases where the plaintiff alleges that he was denied a promotion. *Hardin v. CNA Inc. Cos.*, 103 F.Supp. 2d 1091, 1096-97 (N.D. Ind. 1999) (cause of action accrued when plaintiff learned she would not be interviewed or selected for promotion, not when she learned who had received the promotion); *Crawford v. Carroll*, 04-89, 2007 U.S. Dist. LEXIS 16678, at *12-13 (N.D.Ga. Mar. 8, 2007) (statute of limitations began to run when plaintiff learned she had not received promotion); *Lacy v. Ameritech Mobile Comm., Inc.*, 965 F.Supp. 1056, 1064 (N.D. Il. 1997) (violation occurred when plaintiff learned that he would not receive promotion). Indeed, once the adverse employment act occurs, such as a termination or failure to promote, the employee becomes obligated to make further inquiry into the circumstances surrounding the adverse action. *Bouker v. CIGNA Corp.*, 94-39, 1994 WL 594273, at *2 (E.D.Pa. Oct. 24, 1994).

That an employee discovers his injury at the time of the complained of employment act is a long standing principle in the Third Circuit. In *Delaware State College,* the plaintiff ("Ricks"), a college professor, was denied tenure by his employer and, pursuant to college policy, entered into a one year "terminal contract" to teach at the college. On June 26, 1974, in response to the college's decision regarding his tenure, Ricks filed a grievance with the grievance committee of the board of trustees of the college. On September 12, 1974, Ricks was notified that his grievance had been denied. On April 28, 1975, after the appropriate Delaware agency had waived its primary jurisdiction over Ricks' employment discrimination charge under Title VII of the Civil Rights Act of 1964, the EEOC accepted Ricks' complaint for filing. *Id.* at 254. More than two years later, the

EEOC issued a "right to sue" letter and Ricks filed his lawsuit on September 9, 1977.  Pursuant to

Title VII, Ricks was required to file his claim within 180 days of the alleged unlawful employment

practice.  *Id.* (citing 42 U.S.C. § 2000e-5(e)).  Pursuant to the applicable Delaware statute of

limitations, Ricks was allowed three years within which to file his claim.  The District Court

dismissed Ricks' claims as untimely because, it held, the only potentially unlawful employment

action alleged was the employer's decision to deny tenure to Ricks and that the limitations period

for Ricks' claims began to run as of June 26, 1974, the date he was notified that he would be denied

tenure.  *Id.* at 253.  The Court of Appeals reversed, holding that the limitations period for Ricks'

claims did not begin to run until the expiration of his "terminal" contract, on June 30, 1975.  *Id.* at

255-256.

　　　The United States Supreme Court held that Ricks' claims were untimely and that the alleged

discriminatory conduct occurred at the time the tenure decision was made and communicated to

Ricks.  *Id.* at 258.  This is so, the Court held, even though the effects of the tenure denial (the

eventual loss of his teaching position) did not occur until later, because the only challenged practice

was the employer's decision to deny tenure.  *Id.*  In order to determine the timeliness of a lawsuit,

the court must identify precisely the unlawful employment practice of which the plaintiff complains.

*Id.* at 257.  Indeed, the "proper focus is upon the time of the *discriminatory acts*, not upon the time

at which the consequences of the acts became the most painful."  *Id*. at 258 (citing *Abramson v.

Univ. of Hawaii*, 594 F.2d 202, 209 (1979)).

　　　The rule set forth in *Ricks* holds true even where a plaintiff subsequently learns that the sex,

race or age of his replacement implies discriminatory treatment.  In *Wastak*, the plaintiff, John R.

Wastak ("Wastak"), a former administrator for a psychiatry department at a health network, alleged

age discrimination in violation of the PHRA and the ADEA when he was terminated from his position, purportedly for conducting inappropriate lease negotiations on behalf of his employer. *Wastak,* 342 F.3d at 284.  Wastak was fired on March 12, 1998, at the age of 57.  On the day of his termination, the employer notified Wastak that it intended to hire a replacement.  *Id*. at 285.  Nine months later, in December of 1998, Wastak learned that he had been replaced by a 44 year old woman.  *Id*.  At that time, Wastak suspected that he had been discriminated against because of his age.  *Id*.  Accordingly, Wastak hired legal counsel and, on July 20, 1999 (495 days after his termination), filed a charge with the EEOC alleging age discrimination against his employer.  *Id.* Pursuant to the relevant statute of limitations, Wastak's charge was required to have been filed with the EEOC within 300 days of the accrual of the cause of action.  On March 1, 2000, the EEOC dismissed the charge as untimely.

Wastak argued that his age discrimination claim did not accrue until December of 1998, when he learned that he had been replaced by a younger worker, and hence, was able to establish a *prima facie* case of age discrimination.  The Third Circuit disagreed with Wastak, holding that "Wastak's argument misconceives the nature of the discovery rule" in employment discrimination cases by asserting that the statute of limitations begins to run in employment discrimination cases when the plaintiff learns, for example, of his replacement by a younger worker, and is therefore able to establish a *prima facie* case of age discrimination.  *Id*. at 286-287.  Further, the Court held, Wastak's argument was precluded by the Third Circuit's decision in *Oshiver* which held that the statute of limitations began to run at the time the alleged discriminatory action was made and communicated to the plaintiff.  Citing *Oshiver,* the Court held that Wastak "discovered" his injury on March 12, 1998, when he was terminated.  *Id.* at 287.  Upon termination, Wastak knew both that

he had been injured (because he had been terminated) and the cause of his injury (his employer had terminated him). *Id*. Although Wastak argued that he did not have reason to know that he was the victim of age discrimination until he learned that he had been replaced by a younger employee, the Court held that that had "little to do with whether his claim was prospective as of March 1998, a question that depends solely on when his claim accrued under the discovery rule." *Id.*

As set forth above, the law of *Ricks, Oshiver* and *Wastak* also applies in cases where the adverse employment action is a failure to promote or receive an opportunity within the same company. *Hardin,* 103 F.Supp. 2d at 1096-97. In *Hardin*, the plaintiff, Adonis Hardin ("Hardin"), a black female, complained that her employer discriminated against her on the basis of race and sex when she was denied the opportunity to interview for a position which was eventually given to two white males. *Id*. at 1097. In that case, Hardin calculated the statute of limitations from the time she learned who had been hired for these positions. The court, however, held that Hardin's cause of action accrued, and therefore, the statute of limitations began to run, when she was told she would not be interviewed for the position she sought. *Id. citing Ricks*, 449 U.S. at 258.

In this case, the Court must first identify the employment practice of which Plaintiff complains. *Ricks*, 449 U.S. at 257. Plaintiff complains that he was not interviewed or hired for the position of AVP TRS in Pittsburgh because of his age and his sex. Complaint at ¶¶ 22, 23. Plaintiff learned that he would not be hired for this position on February 27, 2004, when Mr. Brinkman notified Plaintiff that he would not be part of the TRS team in Pittsburgh. SOF at ¶32. That Plaintiff's belief that he was a victim of discrimination was not "confirmed" until Ms. Heinl was hired to fill the position of AVP TRS is of no matter because Plaintiff "discovered" that he had been injured by his employer on February 27, 2004. Even if the Court assumes *arguendo* that Plaintiff's

13

claim did not accrue when he was told he would not become part of the TRS team in Pittsburgh, Plaintiff admits that he knew of the alleged discrimination at least as of April of 2004. *See, e.g.* SOF at ¶ 33, 34, Exhibit C ("I expressed some very specific concerns to you when we met in your office during the last week of this past April, at which time it seemed to me that Mr. Brinkman. . . was following discriminatory practices with respect to age, and possibly gender. . .").

Finally, Plaintiff cannot argue that the statute of limitations could not start to run until he learned that Ms. Heinl had been hired because only then could he make his *prima facie* case. A plaintiff claiming discrimination need not have collected all of the information needed to make a *prima facie* case at the time that plaintiff files a complaint with EEOC. *Wastak*, 342 F.3d at 288 n. 1. Indeed, he must only allege "evidence adequate to create an inference" that the employment action was discriminatory. *Id.* (citation omitted). While Plaintiff's prima facie case may have been speculative prior to Ms. Heinl's hire, Plaintiff informed Ms. Velimesis in April of 2004 that he possessed "evidence adequate to create an inference" of Defendant's discriminatory conduct. SOF at ¶ 33 and Exhibit C.

Therefore, the statute of limitations for Plaintiff's claim began to run at the time he learned that he would not be transferred to Pittsburgh to become AVP TRS, or, at the very latest, when Plaintiff complained to Ms. Velimesis in April of 2004 that Mr. Brinkman had discriminated against him on the basis of age and possibly gender. Accordingly, in either instance, Plaintiff's EEOC claim, filed on December 3, 2004, was filed outside of the 180 day statute of limitations and was therefore, untimely.

**C.    No Issue of Fact Exists As To Whether Plaintiff Suffered an Adverse Employment Action.**

Next, Defendant argues that it is entitled to summary judgment because Plaintiff fails to establish a *prima facie* case of discrimination pursuant to Title VII and the ADEA in that he has not shown that he suffered a materially adverse employment action when he was told that he would not be considered for the position of AVP TRS in Pittsburgh. *See, e.g. Conners v. Chrysler Fin. Corp.*, 160 F.3d 971, 973 (3d Cir. 1998) (setting forth elements of prima facie case). Defendant argues that the employment action of which Plaintiff complains, Defendant's failure to transfer Plaintiff from the position of AVP Check in Cleveland to AVP TRS in Pittsburgh, resulted in the denial of a lateral transfer. It is well settled that a lateral transfer, or failure to be given the same, is not a materially adverse employment action sufficient to establish a *prima facie* case of employment discrimination. *See e.g., Fallon v. Meissner,* 66 Fed. Appx. 348, 352 (3d Cir. 2003). Accordingly, Defendant argues that Plaintiff fails to establish a *prima facie* case, and therefore, Defendant is entitled to summary judgment as to Plaintiff's claims.

Plaintiff argues, however, that the transfer from AVP Check in Cleveland to AVP TRS in Pittsburgh would have been a "lateral" move in name only. That is, Plaintiff claims, the two positions, although both AVP positions, are not truly on equal footing. First, Plaintiff disputes that those who hold the position of AVP Check in Cleveland and AVP TRS in Pittsburgh receive the same salary structure and benefits. Plaintiff's Facts at ¶ 42. Further, Plaintiff denies that had he been transferred to AVP TRS in Pittsburgh, the transfer would not have resulted in an increase in salary or benefits. Plaintiff's Facts at ¶ 43. Finally, Plaintiff contends that the Check unit is a "dying" unit which will eventually become obsolete because of electronic banking and has fewer

15

long term opportunities compared to TRS, which has been earmarked as a permanent function.

Therefore, Plaintiff concludes, his current position is less prestigious than that of AVP TRS in

Pittsburgh because it provides fewer opportunities for growth and advancement.  Plaintiff's Facts

at ¶ 44; (Docket No. 58, Plaintiff's Response in Opposition to Defendant's Motion for Summary

Judgment ("Plaintiff's Response") at p. 3).  Plaintiff's disputes as to the facts, however, are entirely

conclusive and/or speculative.  Such conclusory and speculative arguments are insufficient to satisfy

Plaintiff's burden at this stage.

On a motion for summary judgment, once the moving party satisfies its burden, the burden

shifts to the non-moving party, who must go beyond its pleadings and designate specific facts by the

use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a

genuine issue for trial.  *Celotex*, 477 U.S. at 324.  The nonmoving party "cannot simply reassert

factually unsupported allegations contained in its pleadings." *Williams*, 891 F.2d at 460.  Moreover,

conclusory statements, including those made in an affidavit, require corroboration by at least some

evidence of discrimination. *Fletcher v. Lucent Tech., Inc.*, 207 Fed. Appx. 135, 138 (3d Cir. 2006)

(citing *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002) ("In order to satisfy the

standard for summary judgment 'the affiant must ordinarily set forth facts, rather than opinions or

conclusions.  An affidavit that is 'essentially conclusory' and lacking in specific facts is inadequate

to satisfy the movant [or non-movant]'s burden.'")).

In support of his position that the two AVP positions at issue are not equal, Plaintiff

speculates, but sets forth no evidence in support of such speculation, that he may have received a

salary increase or other  benefits had he been transferred to the position of AVP TRS in Pittsburgh.

Plaintiff's Facts at ¶ 40, 42, 43.  Further, Plaintiff concludes, again without support, that Defendant's

16

decision to deny him the position of AVP TRS in Pittsburgh was a material adverse employment action because his current position is a "dead end" job without growth potential. Finally, Plaintiff's argument that a transfer to AVP TRS in Pittsburgh could have ultimately resulted in his promotion to Mr. Brinkman's position of VP TRS, and consequently, a raise in salary, is speculative at best. Plaintiff's Facts at ¶ 44, 54, 55; Affidavit of Kenneth J. Good at ¶ 5 (Docket No. 52-2); (Docket 45-2 at p. 307). Given the speculative and conclusory nature of Plaintiff's arguments, none create a genuine issue of material fact sufficient to defeat Defendant's Motion.

Further, Plaintiff's claim for damages arising out of his transfer to Cleveland also fails because he voluntarily accepted the position and the lifestyle implications of supporting two households. Plaintiff admits that, in 2003, he became aware of Defendant's efforts to consolidate check operations to Cleveland, or as Plaintiff testified, the "collapse" of the check processing function in Pittsburgh. (Docket 45-2 at p. 74). Consequently, Plaintiff voluntarily agreed to transfer to his current position in Cleveland. *Id.* at p. 301. Further, Plaintiff admits that had he not accepted the transfer, he would have lost his job entirely. *Id.* Moreover, Plaintiff chose to establish a second residence in Cleveland, while his wife remained in Pittsburgh to live and work, instead of either moving or commuting to Cleveland form Pittsburgh. *Id.* at 220, 221, 309. All of these were choices made willingly by Plaintiff and none of them are associated with any alleged discriminatory conduct on the part of Defendant. Accordingly, any claim for damages arising out of his transfer to Cleveland (for example, rental costs associated with his residence in Cleveland) fails.

Finally, Plaintiff even admits to deficiencies as to the merits of his claim that he was discriminated against by his employer on the basis of age and sex. Indeed, Plaintiff's own admissions chip away at his allegations of Defendant's discriminatory animus toward Plaintiff.

17

While Plaintiff alleges that he was promised "fair consideration for coming back to Pittsburgh" should that opportunity arise, he also admits that he was not promised that he would be transferred back to Pittsburgh.  *Id.* at 302; Plaintiff's Facts at ¶ 23.  In his deposition, Plaintiff also admits that those holding the position of VP, such as Mr. Brinkman and the Mr. Turcinov, VP of Check, who was Plaintiff's supervisor, were entitled to select their own AVP teams.  Docket 45-2 at p. 239. Further, Plaintiff admits that Mr. Brinkman expressed a legitimate reason for not wanting Plaintiff on his TRS team in Pittsburgh.  Indeed, Mr. Brinkman informed Plaintiff that he "couldn't trust" Plaintiff's temper.  (Docket 45-2 at p. 238).  Accordingly, although not at issue in this Motion for Summary Judgment, the Court notes that Plaintiff's attempt to establish discriminatory conduct by his employer is not persuasive to this Court.

Although the Court need not address this issue, because it finds that summary judgment is appropriate on grounds related to the statute of limitations, the Court believes that Plaintiff has not established a prima facie case as from this viewpoint no adverse employment action occurred. Accordingly, Defendant's Motion for Summary Judgment is GRANTED.


V.     **CONCLUSION**

Accordingly, this 9th day of October, 2007, Defendant's Motion for Summary Judgment is **GRANTED** [DE 42].  An appropriate order follows.


Dated: October 9th, 2007                              BY THE COURT:
                                                      *s/ Nora Barry Fischer*
                                                      Nora Barry Fischer
                                                      United States District Judge

cc: Counsel of Record

18